O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DEBORAH LUGO,                        )  Case No. CV 10-05409 DDP (JCx)
                                     )
              Plaintiff,             )
                                     )  **ORDER GRANTING DEFENDANT'S MOTION**
       v.                            )  **FOR SUMMARY JUDGMENT**
                                     )
HUNTINGTON MEMORIAL                  )
HOSPITAL, a corporation;             )
EDNA DELEON,                         )  [Dkt. Nos. 18, 22]
                                     )
              Defendants.            )
_____  )

     Presently before the court is Defendants' Motion for Summary
Judgment.  Having considered the submissions of the parties and
heard oral argument, the court grants the motion and adopts the
following order.

**I.   Background**[1]

     Plaintiff Deborah Lugo ("Lugo") began working at Huntington
Memorial Hospital ("Huntington") as a Quality Management Specialist

_____

     [1] Plaintiff has not filed the required Statement of Genuine
Disputes of Material Fact.  C.D. Cal. L.R. 56-2.  Lugo's opposition
to the instant motion, however, refers to itself as a Statement of
Genuine Disputes.  Pages 22-40 of Lugo's opposition repeat the same
arguments twenty times, verbatim, in response to several of
Defendants' arguments.

1   ("QMS") on September 17, 2007.[2]  (Deposition of Deborah Lugo ("Lugo

2   Depo.") at 190; Declaration of Edna DeLeon ("DeLeon Dec.) ¶ 4.)  As

3   a Quality Management Specialist, Lugo was responsible for

4   monitoring and improving physician performance.  (DeLeon Dec. ¶¶ 5-

5   8.)  Defendant Edna DeLeon served as Lugo's supervisor.  (DeLeon

6   Dec. ¶ 4.)

7        At some point between September 2007 and July 2008, Lugo's

8   supervisors, including Huntington's Chair of Cardiology, grew

9   concerned about deficiencies in Lugo's work performance.  (DeLeon

10  Dec. ¶¶ 9-10.)  On August 15, 2008, following a Human Resources

11  investigation, Lugo received a written warning regarding her job

12  performance.  (Exhibit B to Plaintiff's Motion.)  Approximately

13  seven months later, on March 19, 2009, Lugo received a second

14  written warning regarding "continued medical review errors."[3]

15  (Exhibit C to Mot.)  In April 2009, Huntington's Medical Staff

16  Coordinator submitted a written complaint about Lugo to DeLeon,

17  requesting that Lugo be relieved of certain responsibilities.

18  (Exhibit D to Mot.)  On June 2, 2009, Lugo received a third and

19  final written warning regarding "Continued Job Performance

20  Concerns," including delays, inappropriate and unprofessional

21  communications, and incomplete work product.  (Exhibit E to Mot.)

22

23       [2] Though the record does not indicate Lugo's salary at the

24  time of hiring, her salary in June 2009 was $97,760.00.  (DeLeon
    Dec. ¶ 23.)

25       [3] Lugo asserts that Exhibit B to her opposition establishes

26  that she was assigned twice as much work as other employees.  (Opp.
    at 2.)  Exhibit B is an unauthenticated chart titled "Work Load,"

27  which lists numbers in columns beneath letters that presumably
    represent individual employees' initials.  Neither the chart nor

28  Lugo's opposition provides any guidance in interpreting this
    document, the provenance of which is unknown.

1    In June 2009, Huntington decided to eliminate several
2  positions across several departments, including a Quality
3  Management Specialist position.  (Declaration of Paula Verrette, MD
4  ¶¶ 10, 12.)  Lugo was the lowest-performing Quality Management
5  Specialist, and was therefore laid-off.  (Verrette Dec. ¶ 12.)
6  Huntington eliminated Lugo's former position entirely, and
7  therefore has not hired anyone to take Lugo's place.  (Id. ¶ 13.)

8    Lugo filed the instant suit against Defendants, alleging race
9  discrimination, failure to pay overtime, failure to provide mean
10  and rest periods, defamation, and intentional infliction of
11  emotional distress.  Defendants now move for summary judgment on
12  all claims.

13  **II.  Legal Standard**

14    A motion for summary judgment must be granted when "the
15  pleadings, depositions, answers to interrogatories, and admissions
16  on file, together with the affidavits, if any, show that there is
17  no genuine issue as to any material fact and that the moving party
18  is entitled to a judgment as a matter of law." Fed. R. Civ. P.
19  56(c).  A party seeking summary judgment bears the initial burden
20  of informing the court of the basis for its motion and of
21  identifying those portions of the pleadings and discovery responses
22  that demonstrate the absence of a genuine issue of material fact.
23  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

24    Where the moving party will have the burden of proof on an
25  issue at trial, the movant must affirmatively demonstrate that no
26  reasonable trier of fact could find other than for the moving
27  party.  On an issue as to which the nonmoving party will have the
28  burden of proof, however, the movant can prevail merely by pointing

1  out that there is an absence of evidence to support the nonmoving

2  party's case.   See id.   If the moving party meets its initial

3  burden, the non-moving party must set forth, by affidavit or as

4  otherwise provided in Rule 56, "specific facts showing that

5  there is a genuine issue for trial." Anderson v. Liberty Lobby,

6  Inc., 477 U.S. 242, 250 (1986).   The evidence is viewed in the

7  light most favorable to the non-moving party, and all justifiable

8  inferences are to be drawn in its favor.   Anderson, 477 U.S. at

9  242.

10      It is not the court's task "to scour the record in search of a

11  genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,

12  1278 (9th Cir. 1996).   Counsel have an obligation to lay out their

13  support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026,

14  1031 (9th Cir. 2001). The court "need not examine the entire file

15  for evidence establishing a genuine issue of fact, where the

16  evidence is not set forth in the opposition papers with adequate

17  references so that it could conveniently be found." Id. **III.**

18  **Discussion**

19      As an initial matter, the court notes that Lugo has submitted

20  very little comprehensible or admissible evidence.   Lugo's Exhibit

21  A is an unauthenticated e-mail from one Joshua Barbosa, which

22  appears to consist of opinion regarding Defendant DeLeon, the

23  relevance of which is unclear.   Lugo's Exhibit B, which is also

24  unauthenticated, appears to be a list of Quality Management

25  Specialists, as well as a chart described at note 3, supra.

26  Exhibit C, also unauthenticated, appears to include evaluations of

27  Lugo's suitability for a Quality Management Specialist position

28  prior to her employment at Huntington.   Exhibit D, also

4

1   unauthenticated, appears to be a list of certain employees and
2   their races.  The court cannot, and does not, consider any of these
3   documents for purposes of this motion.  Orr v. Bank of America, NT
4   & SA, 285 F.3d 764, 773 (9th Cir. 2002).  The court further notes
5   that self-serving, uncorroborated testimony cannot create a genuine
6   issue sufficient to defeat summary judgment.  Villiarimo v. Aloha
7   Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).
8       A.  Race Discrimination
9       To defeat a motion for summary judgment, a plaintiff alleging
10  discrimination bears the burden to establish a prima facie case.
11  That is, he "must offer evidence that gives rise to an inference of
12  unlawful discrimination." Godwin v. Hunt Wesson, Inc., 150 F.3d
13  1217, 1220 (9th Cir. 1998) (internal quotation omitted). A prima
14  facie case may be based on direct evidence of discriminatory intent
15  or on a presumption based on factors the Supreme Court set out in
16  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
17      In order establish a prima facie case under McDonnell
18  Douglas, a plaintiff must show that: "(1) he belonged to a
19  protected class; (2) he was qualified for his job; (3) he was
20  subjected to an adverse employment action; and (4) similarly
21  situated employees not in his protected class received more
22  favorable treatment."  Anthoine v. N. Cent. Counties Consortium,
23  605 F.3d 740, 753 (9th Cir. 2010).  Once the plaintiff establishes
24  a prima facie case, "the burden shifts to the defendant[] to
25  provide non-discriminatory reasons for the adverse action." Id.  If
26  the employer does so, "the prima facie case 'drops out of the
27  picture,' and a court evaluates the evidence to determine whether a
28  reasonable jury could conclude that defendants discriminated"

1  against the plaintiff. Id.  Once the employer has offered a

2  nondiscriminatory reason for the employment action, the plaintiff

3  may defeat summary judgment by (1) providing direct or

4  circumstantial evidence that the employer was more likely motivated

5  by a discriminatory reason or (2) showing that the proffered

6  explanation is "'unworthy of credence' because it is internally

7  inconsistent or otherwise not believable." Chuang v. Univ. of Cal.

8  Davis, Bd. Of Trs., 225 F.3d 1115, 1127 (9th Cir. 2000).

9       Here, Lugo has failed to establish a prima facie case.  There

10 is no evidence in the record that she belongs to a protected class,

11 nor that any other similarly situated employees who are not members

12 of a protected class received more favorable treatment.  Even if

13 Lugo could make a prima facie case of discrimination, Defendants

14 have provided extensive evidence of credible, non-discriminatory

15 reasons for Lugo's termination.  On this record, no reasonable jury

16 could conclude that Defendants discriminated against Lugo on the

17 basis of race.

18      B.  Failure to Pay Overtime

19      As an initial matter, there is no evidence in the record

20 regarding the hours Lugo worked.  Lugo does not contest Defendants'

21 assertion that, as an administrative employee, she was not entitled

22 to overtime pay.  See Cal. Code Regs § 11040(1)(A).  Furthermore,

23 Lugo acknowledged at the time she was hired that her Quality

24 Management Specialist position was not eligible for overtime.

25 (DeLeon Dec. ¶ 24; Exhibit F to Mot.)

26      C.   Failure to Pay Meal Breaks

27      California Employers must provide employees with a thirty-

28 minute meal break for every five hours worked per day.  Cal. Lab.

6

1   Code §§ 512(a), 226.7.  By Lugo's own admission, she was provided

2   with meal breaks, and was never told that she could or should not

3   take a meal break.[4]  (Lugo Depo. at 258-259.)  The only evidence to

4   suggest that Lugo was forced to forgo meal breaks is Lugo's own

5   declaration that she "often" missed breaks "because of the

6   inequitable workload."  (Lugo Dec. ¶ 7.)  This self-serving

7   declaration, however, does not create a genuine issue of fact.

8   <u>Villiarimo</u>, 281 F.3d at 1061.

9        D.   Defamation

10       Lugo's Fourth Cause of Action alleges that Defendant DeLeon

11  defamed Lugo by criticizing her work performance in an "Employee

12  Memorandum."  (FAC ¶¶ 54-60).  Defamation "involves (a) a

13  publication that is (b) false, (c) defamatory, and (d)

14  unprivileged, and that (e) has a natural tendency to injure."  <u>Taus</u>

15  <u>v. Loftus</u>, 40 Cal. 4th 683, 720 (2007).  It is difficult to

16  evaluate Lugo's claim, as she has not submitted the allegedly

17  offending document.  However, Defendants assert, and Lugo does not

18  contest, that the memorandum was only "published" to one other

19  person, a Human Resources employee who signed and witnessed the

20  disciplinary memorandum.  (Mot. at 21.)  Communications between

21  interested parties, however, are privileged, and cannot serve as

22  the basis of a defamation claim.  Cal. Civ. Code. § 47(c); <u>See</u>,

23  <u>e.g.</u>, <u>King v. United Parcel Serv., Inc.</u>, 152 Cal.App.4th 426, 440

24  (2007) ("[B]ecause an employer and its employees have a common

25

26       [4] Though the heading of Lugo's Third Cause of Action also
27  refers to lack of rest breaks, Lugo only alleges that she was
    denied meal breaks.  (First Amended Complaint ¶ 48.)  Regardless,
28  Lugo testified that she was also provided with rest breaks.  (Lugo
    Depo. at 259.)

7

interest in protecting the workplace from abuse, an employer's
statements to employees regarding the reasons for termination of
another employee generally are privileged.") DeLeon and Human
Resources personnel had a common interest in Lugo's job
performance.  DeLeon therefore could not have defamed Lugo merely
by making a privileged communication with a Human Resources
employee.[5]

E.  Intentional Infliction of Emotional Distress

A cause of action for emotional distress in the employment
context, including claims related to criticism of work practices,
"is barred by the exclusive remedy provisions of the workers'
compensation law." Accardi v. Superior Court, 17 Cal.App.4th 341,
352 (1993).  Even if Lugo's claim were not preempted, she has not
established even a prima facie case of intentional infliction of
emotional distress.  To do so, she must show (1) outrageous conduct
by Defendants, (2) intent or reckless disregard of the probability
of causing distress (3) severe emotional suffering, and (4)
proximate case.  Cole v. Fair Oaks Fire Protection District, 43
Cal.3d 148, 155 n.7 (1987).  The evidence in the record is
insufficient to establish any of these elements.

///

///

_____

[5] Lugo also testified that other parties defamed her at a
conference in Colorado.  (Lugo Depo. at 74, 83.)  Though Defendants
respond to this allegation in their motion, it does not appear to
the court that Lugo alleged this instance of defamation in her
First Amended Complaint, nor has Lugo provided any evidence
regarding this incident.

**IV.   Conclusion**

     For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.   Plaintiff's Motion to Extend Discovery Cutoff is DENIED as moot.

IT IS SO ORDERED.

Dated: October 7, 2011

DEAN D. PREGERSON

United States District Judge